Hopefully we won't do anything to shame you. And also, I think we have some students from Temple University who are sitting in. Professor Rose, and hopefully when you leave you will not think that law school is probably the biggest mistake you've ever made in your entire life. First case is U.S. v. Albertson. Good morning, Your Honor. Good morning. Salvatore Adamo on behalf of Mr. Alperson. Your Honor, I'd like to reserve five minutes for rebuttal. Okay. With the Court's permission, may I proceed? Please. One of the questions that I've got from the outset is that on your opening brief, you've got your client who at sentencing had brought up at least two or possibly three cases, Crandon and Volcker being the two that are on point, and yet you didn't cite them in your opening brief. Why? I didn't think necessarily that they were supportive, but after reflection I believe that they are. I think Volcker was helpful to you. It was. Miller, when I read Miller, that gave me an idea that I needed to do something. Counsel, you didn't oppose the motion to strike the argument in the reply brief either. Why not? This Court has a tradition of wanting to hear arguments, and I felt that this Court was going to, frankly, grant the government's motion to ‑‑ Strike? No, no. I opposed the strike. Sorry. I did oppose the strike, I thought. Did you put in papers to oppose the strike? Yes, sir. Yes, I did. Yeah, I opposed the strike. What do we do with Thielmans? Are you advocating that we have some kind, one, that we have to revisit Thielman and ask our colleagues to unbank it? Or are you advocating a 10‑year limit on these kinds of conditions? That case is sitting there. What do we do with that? Well, Your Honor, with this particular case, I'm advocating that we get a remand. I'm sorry. I'm advocating for a remand. But if it remands, Thielman's not going to go away. The district court still has our case in Thielman, 2006 case, where we looked at a similar kind of restriction. It was only a 10‑year restriction. Only a 10‑year restriction. And even the explanation for why the court was imposing a 10‑year restriction was relatively similar. I agree with your point that when you just say, well, I'm imposing this sentence because of the need to deter others and protect the public. You can make that statement to defend anything from house arrest to capital punishment. That's nothing. Sure. But it's there. And we already have said in Thielman that that was a sufficient explanation of the restriction. How do you get around that? Well, Your Honor, I believe in Thielman, the Internet was used for purposes of soliciting a victim besides the downloading of images. In this case, it's factually different. In this case, a victim wasn't solicited via the Internet. There was only downloading of images. You could argue Thielman was the hub and there was about eight other people with whom he interacted on a separate basis as part of this ring and that he was a particularly bad actor. The flip to that would be that because he was a particularly bad actor, that's why he got 20 years and only 10 years with respect to the supervised release conditions, which is what's at issue here. Well, the supervised release conditions in this case have more of a bite. Mr. Ablissing got five years due to his prior record and also the nature of the crime, what was involved. In Thielman... Elaborate on that. What was the nature of the crime that was involved? It was downloading pornographic images. He pled guilty to a 11-C plea to... But there was other relative conduct that the court could... I'm not a big fan of that. My particular position, Your Honor, is that these issues... This was brought up during a plea allocation where the government wanted Mr. Ablissing to admit to, I think, over 300 pornographic images and he refused to. And they settled on... I believe the record said 37. The PSI says 39. But he settled on a number between the two, I believe. And I believe that the government had its opportunity if they really wanted to push. Because they were on the verge of trial and they had their witnesses ready to go. So I believe the government, frankly, waived the additional images because they felt that they couldn't... We have a history of a state court... I mean, the government didn't waive the right to claim up to, in this case, 25 years with respect to supervised release conditions. That's correct. And it could be anywhere from 5 to 25. And the concern was that you have a person who was, at this time, 40 years old. And that had, looks like, a significant continuing problem with regard to the bringing up and possessing of these type of pornographic images with respect to children. And in that context, their argument was that there's something should be done to monitor him until he's in his mid-60s, at least. Or, in this case, 70, I guess. 5 plus 25 is what they were arguing for. Well, I believe the Volcker requires the court to make a determination that the reasonableness of the period of supervised release hinges upon the conduct. In all the cases that were cited in Miller, as I said previously, there was a victim that was used by the Internet. The perpetrator used the Internet to lure a victim. This man didn't use the Internet. And we're talking about the special conditions in the period of time. But what's the rule of law? Are you saying that because he did not use the Internet to lure victims, the court could not reasonably impose any restriction on his use? No, no, no, no. I'm not saying that. I'm talking about the period of time. But you're going to lose on the period of time because you agreed to the 25-year period of supervised release. Up to 25 years. Up to 25 years. 20. I'm not good at math, but I think 20 is up to 25, and it's in that time frame. That wasn't waived. There wasn't a waiver of appeal on that issue. No, I agree. Okay. But in your agreement, didn't you say that up to 25 years would be reasonable? You could argue that. It was 5 to 25, and each side could argue for whatever they wished to argue. Right. Exactly. Yeah. And at the Defense Council... You argued that a smaller period should be imposed. At the Defense Council, yeah. Okay. But didn't you concede that up to 25 years would be reasonable? Am I misreading that agreement? No, sir. I believe the argument was in the plea elocution that the government was free to argue up to 25 years. Okay. There wasn't any... The 11C plea didn't deal with the special conditions. It only dealt with the 5 years. No, I know. And I'm trying to isolate those between the term of supervised release and the special conditions. It seems to me on the term, you've got a real long road to hoe. The real argument is on the special conditions. And I'm trying to focus in on, given the kind of restriction we okayed in Thielman for 10 years, why isn't a period of 20 years okay? Or are you advocating for basically some kind of bright-line cutoff on how long somebody can be restricted from using the Internet as a condition of supervised release? I think, Your Honor, what I'm arguing for is that we have to look at each case individually. I think this is what this Court indicated in its Miller decision, that each case stands on its own merits. I see... And then are you saying if there's no solicitation, it's not appropriate to impose... I think that's crucial. I think that's absolutely crucial. I think that's the very big point of this Court when it issued its opinion in Miller, that they looked at how the Internet was used to actually harm the children. There's one thing to download pornographic images, disgusting as it is. But there's another thing for an adult to lure children. In all these other cases, children were involved where there was an actual victim. And I think that's a big, big... That's a bright line, frankly, that the Court should look at in determining reasonableness. And I think the District Courts need some guidance regarding that. I think that's crucial. And I believe the Court went... specifically addressing that particular point. You know, back to something we were talking about. Now, you cited Volker, and we've talked about Thielman and Crandon and Freeman are in your brief. I take it your argument is you read Miller and the light bulb went on. Correct. But can it really be said that Miller changed the legal landscape regarding your argument on this special condition? It factually helped my condition substantially. Did it change the legal landscape, though? I think it clarified it substantially. What did it clarify? Volker was 2005. Loy was 1997-96. The cases had been... In fact, Miller relies on Volker and Loy, cases that had been around for a while when it came down. There was nothing new in Miller, is there? Is the possible clarification that what Miller is saying, our most recent case, that you should look for the least restrictive option with regard to computer access barring? And in that case, they were saying, you know, if you can do monitoring... The whole idea here is to have someone who's committed a crime by use of the computer be monitored with respect to continued use of the computer once that person is out of prison. That's correct. And so isn't that the clarification that comes out of Miller? Yes. And you're saying that would be absent luring? Yes, sir. Absent luring, you need to have... Even with luring, you'd still have to have under 3553. You'd still have to have the least restrictive limitation. Certainly. But an extended period of supervised release would be more warranted in that situation versus this particular situation. But again, when you get into the extended period, at least in my mind, that's a different argument and a harder argument than the special conditions that you're challenging. Thank you. May it please the Court, I'm Ted Smith. I'm an assistant United States attorney for the Middle District of Pennsylvania, representing the United States as the appellee. Could I just ask you at the outset just to clarify one thing with respect to... It appears from your surreply brief that it took a very different tack than your motion to strike. The motion to strike was that there was an argument that wasn't made in the opening brief, it was made in the reply brief, and that should be stricken or given the chance to file, in the case of the government, a brief in response to the reply brief or a surreply brief. And I take it, based on what you've said in your surreply brief, that, okay, we're not going to press the waiver argument. Is that correct? No, that's not really correct. I still think it's waived. But you said we're not going to press the, quote, affirmative waiver, close quote. What do you mean by affirmative waiver as opposed to non-affirmative waiver? Oh, no, that's a different argument that I'm not going to press. It's one that the Court actually brought up in my opponent's argument. So what's the difference? That when the defendant entered into a plea agreement, the plea agreement expressly stated, and I'm looking at page 27 of the appendix, the government and the defendant stipulate and agree to the following sentence, imprisonment for a term of 60 months, supervised release term of up to life, and then the parties modified that to 25 years, a $100 special assessment, no fine based on the defendant's inability to pay. The parties agree that this sentence is a reasonable sentence under the facts and circumstances of this case. I think that is an affirmative waiver. So you're saying there's a plea agreement that waived? Yes. At the district court level, even though both sides had the ability to argue before Judge Jones that the supervised release conditions and length should be, in this case, five years, I think it was argued by the defendant here and 25 years by the government, by Mr. Simmers. Yes. And the reason that I did not press that waiver argument in the Sir! reply brief is that, frankly, Your Honor, and I'm embarrassed, that the principal brief of the United States, replying to the defendant's opening brief, did not press that waiver argument. And, frankly, at this stage of the proceedings, I did not want myself to press a waiver argument that we were, frankly, asleep at the switch on. I appreciate that. As they say in South Philly, you've done good because I was going to be all over that. Your Honor, I would have anticipated that. But I'm not going to – I'm still not here, really. I think there's a waiver of the issues not presented in the opening brief of the appellant. But I'm not really a – I am a let he who is without sin cast the first stone. And, frankly, I think we filed a responsive brief that failed to discharge our duty to help the court sort out the legal issues and decide this case. Maybe this is what you mean, because I wasn't totally sure what you meant. The United States does not argue affirmative waiver here, nor do we argue the reasonableness of the term was not preserved because the brief of appellee concedes that the reasonableness of the term was preserved at the sentencing hearing through prior counsel's arguments in favor of a five-year term. Yes. I guess that's what you're getting at there. That is what I'm getting at. But I, you know, what I'd like to do, because I think the issue is waived, okay, not by the plea agreement, because we didn't argue that. So that's why you argue later on on the page that Chief Judge McKee is quoting from that there was plain error here because you thought he did something at the district court level that waived his right to make this argument on appeal? I think plain error review applies to the portion of the issue regarding conditions of supervised release as opposed to term, because there was not one word said at sentencing regarding the conditions of supervised release. No. The major, the appellant's brief, the opening brief also focused not on the special conditions, but on the 20-year term. The special conditions pops up in the brief. And I think through the doctrine of waiver on appeal, by failure to raise that issue in the opening brief, I continue to maintain that that issue is waived. Let me ask you. Yes. I mean, I asked your adversary. Did Miller create a sea change? Was there, you know, a change in the legal landscape once Miller was decided? No. Volcker predated Miller, and Volcker was really the case that made all of us in the U.S. attorney community sit up. And take notice. And with all due respect to your honor, yes, a little bit upset. But Thielman was around prior to Miller. Freeman was around prior to Miller. I think the only sea change, I disagree with Judge Ambrose in the suggestion that Miller was the first case. I'm not saying the first case, but I thought the clarification was you really should look for the less restrictive alternative before you throw the kitchen sink in. I find that in Freeman, okay? I find that very plainly in Freeman, okay? But we don't need to argue about that. Personally, I think the only thing really new in Miller was the court's statement in Miller that you can't really evaluate the reasonableness of the term independently of the conditions, okay? And that's why I'm prepared to argue that both the term and the conditions here are reasonable. But what Miller said is, look, don't do anything more than what is necessary to do. And part of the equation is what is the conduct that the person was convicted of. In Crandon, it was a person who used the Internet to lure someone, an underage person, into a relationship. In Freeman, you had, well, that was only five years. The Volcker was the use of the Internet. Thielman was the use of the Internet, again, to get others involved. Here, you could say, and in Miller, it was just somebody bringing up for his own personal use pornographic images that are illegal. Your Honor, I agree with what you said in discussing the cases. I think the important thing to look at here is the fact that the sentence here, the total sentence, including the restriction on liberty created by imprisonment, five years, and the restriction on liberty, much less severe restriction on liberty, created by supervised release, 20 years. That's a total of 25, five of which is incarceration. In Thielman, the total was 30, and 20 of it was incarceration, and only 10 of it was supervised release. And an Internet access condition virtually identical to the one here was held to be reasonable, and the term held to be reasonable by this court. Although, clearly, the activities here were not nearly as egregious as the conduct in Thielman. The only difference is that here there's no evidence that the defendant specifically used the Internet to molest children, although the fact is Thielman had also a ring that he had eight people responding to him. They're really different offenders, aren't they? Very different offenders. This defendant abused a child, and he has been convicted of abusing a child, and that is what got him caught for this child pornography. But that doesn't mean that all child abusers are the same. Certainly does not. And he received a much, this defendant received a much, much lighter sentence than the defendant in Thielman. The sentence was not for child abuse. It was for the possession of the pornographic images. It was for the receipt, as it was in Thielman. Thielman, it wasn't for child abuse. It was for the receipt of the pornographic images. But it certainly is. The defendant in Thielman only got 10 years away from the Internet, right? No. No, I don't think in the 20 years that he was going to be in prison he was going to have unrestricted access to the Internet. So he had a 30-year imposition on him, 20 of which was total incarceration. And I think that's an important point here, and I think it's part of what the district judge said in his statement of reasons. And that is, you know, when I was a state prosecutor, we used to refer to this as let's give the defendant a long tail, okay? This was a relatively short sentence of imprisonment. And that's what Judge Jones referred to here. I mean, you know, there's a long tail to the short sentence. But help me with regard to what's your goal here with respect to supervised release and this person's interaction with respect to computers? What's your goal? Our goal is to have this sentence affirmed. No, no. That's the means to you. You're sentencing. We know you're going to win. What do you want the supervised release to do with respect to this person in connection with this person's use of the Internet? I would presume that that goal is to have this person not be in a position to bring up illegal pornographic images on the Internet once this person is released from prison. Isn't that correct? That's correct. And what Judge Fuentes wrote in Miller was that you can do that by ways of monitoring or putting a filter on the computer that can deal with this just as we deal with children today, making sure that there are certain things on the Internet that they cannot access. Why doesn't that achieve your goal rather than the complete lack of access to the Internet, unless a probation officer tells you it's okay? Two reasons. First, and most importantly, it didn't work already for this defendant. It wasn't probation. What the family did was very different than what you're going to do. That was family probation. That was wife probation. There was no monitoring software. She couldn't enforce it. There was no monitoring software. One of these conditions that is imposed also requires them to put monitoring software on his computer. You can check. The probation officer can come in and check to see what he's been looking at, at least on his computer. That's another point I wanted to make, and that is that the plea or the sentencing provision here, the condition doesn't simply say no Internet access without the approval of the probation officer because it goes on to talk about how the defendant will consent to monitoring. He'll pay for the cost of monitoring software and so forth. To me, that specifically contemplates that at some point that restriction will be taken off, and the probation officer can certainly make the initial decision, but the defendant always has the ability to go to the court. To read it that way, to me it's like belt and suspenders. He can't go online, but you can put software on the computer to make sure he's not going online. But I didn't read it that way at all, and I don't see anything in the judge's pronouncement that would suggest to the defendant that at a certain point he can use the Internet to read the daily New York Times absent the prior approval of the probation officer. And if the approval of the probation officer is unreasonably denied, then the defendant has a remedy with the district court. And I think that's... Going back to Judge Imba's question, the real purpose here is to take away the means that he has to access Kitty Point. And you've got a number of conditions that seem to do that, some of which overlap and some of them seem to bump up against the First Amendment. Well, there is no First Amendment to play with Kitty Point, but reading the New York Times, there would be. And isn't there a less restrictive way, and I think that's your opponent's argument, and it's Miller, a less restrictive way of getting to that? And to the extent that there may be a less restrictive way of getting to that, isn't there an unreasonable condition of supervised release? Well, my answer is Thielman didn't say that the sentence was unreasonable, that that specific condition was unreasonable because there was a less restrictive way. Quite the contrary, the court in Thielman seemed quite comfortable that that was a necessary condition for that defendant. And this is a lighter sentence than the one imposed in Thielman. When you look at it, you were saying that, in effect, Thielman's 30 years, this is 25 years. But let's look at the lens the other way. Miller was somebody who was 60 and was given a lifetime ban. So let's say the actuarial tables show that that person is going to live to be 80, 82, 83. This person is 40, given five years, and then additional 20 years. I mean, for isn't this much or close to the same that you ran up against in Miller, that it's just too long when you add it all together? I don't think 20, well, I don't think it's close to the same. I think Miller was a much less serious offender. Miller went to trial, and all the government could prove, and just barely the court found in the first Miller decision, was possession and receipt of 11 child pornographic images. And they were on a zip disk containing a cornucopia of adult obscenity, which, of course, is presumptively protected by the First Amendment. So there was a real issue as to whether the defendant even knowingly possessed the 11 images. He was found guilty by a jury of knowingly possessing and receiving them. But that's all there was in Miller. There were no prepubescent images. There was no child, no actual child abuse by the defendant in Miller as there was here. Yet in Miller, with respect to the access, and I see my light has, with respect to the access to minors provision, the court held in Miller that that provision, as the district judge had attempted to amend it, even for Miller's life, would be reasonable. So I think Miller is a case that in that respect supports our position as to that condition here, which we haven't talked about very much. But I think Miller is a much less serious offender. Your Honor asked me to concede that offenders differ. Well, they do. This offender is a much more serious offender with a much greater risk of recidivating, in part because of his tendency to minimize his own wrongdoing here, which the district court noted, but in part because we know his interest in children, sexual interest in children, is not theoretical. He has, in fact, been convicted of abusing sexually a 14 or 15-year-old girl. But the point here is we're talking about, I mean, in effect, that's talking about the sentence. Here we have the supervised release. The question is, going back to Judge McKee's question, do you have a problem when this person is out? Do you have a problem with this person getting on a computer and reading the New York Times? No, but I think the means to ensure, if he has Internet access, that all he does is read the New York Times or do his online banking as opposed to viewing child pornography is very, very difficult. And there's no evidence about this in the case, but filtering programs are not perfect. My understanding is that the apparatus out there today is very good compared to what it was just five years ago, and that they can block out pornographic sites. They can block out or you can find out if the person has downloaded anything in any event. And they take the risk that if they do that, there are going to be significant consequences. But why at the outset say you can't pay your bills online, absent some type of approval of a probation officer, you can't read the New York Times, you can't go on to whatever you want, csphilly.com? It just seems like it's shooting a small thing with a big gun. And why shouldn't the court leave it up to the probation officer to decide whether or not he can read the New York Times or do his banking online? Why shouldn't the court just say, in a more precise pronouncement of the special conditions, what it is he cannot do online? Because the probation officer's discretion is not unfettered. Because there's a court, an Article III, excuse me, yes, an Article III judge to supervise the probation officer and make sure that he does not unduly restrict Internet access. Well, that's true, but we have a whole line of cases that says that a judge, a sentencing judge cannot give his or her discretion to the probation officer. There's a responsibility on the part of the court to exercise sentencing discretion, and that cannot be delegated to a certain point to the probation officer. Even though the probation officer's discretion is not unfettered, why shouldn't the court say, look, absent these things, this is what I'm trying to prevent you from doing, don't do this online, and therefore any kind of Internet access is going to require the written approval of the probation officer, except for, and then talk about the kinds of things that we assume the court didn't intend to preclude. But why should the defendant run the risk of deciding, well, if I go read today's New York Times, I don't have my probation officer's okay yet, this is the story I'm interested in, I can't do that, I'm technically in violation of my supervised release. There are several questions there. There's a lot there, I know. Just focus on the last one. And let me answer the question, why should we, okay, we referring to the court. Answer the one you think you can do the best with, how's that? Excuse me? Answer the one you think you can do the best with. I will. So why shouldn't this court hold that that's an improper delegation to the probation officer? Because this court did not do it in Thielman in a published decision, and Thielman is on point with regard to this condition with a defendant like this. And if the court is going to go that far, I suggest that it would be sending very, very mixed signals to district courts after a case like Thielman. We have a judge here who really did try to comply with all that mishmash of case law out there. He made sure that the restriction on access to minors did not include the defendant's own children, if he ever, if he has children of his own, specifically paying attention to this Court's pronouncements in Volcker. So I think this Court's current precedent should prevent it from taking the step that Your Honor is talking about taking unless it goes in bank. Well, if you just look at Miller, I mean, you're right, and it's quoting from Freeman. We make clear or made clear in Freeman that, quote, there is no need to cut off a child pornographer's offender's access to e-mail or benign Internet usage when a more focused restriction limited to pornography sites and images can be enforced by unannounced inspections of material stored on the offender's hard drive or removable disks. And then since then, we now have the ability to put the filters on that actually block this out. Why isn't that the law? And why doesn't this go beyond that less restrictive alternative principle that's noted? Because in Freeman, first of all, Thielman is, I believe, subsequent to Freeman. It is subsequent to Freeman, but Miller is subsequent to Thielman. I understand. But Miller is simply repeating a principle stated in Freeman. Now, part of the problem in Freeman was there was an inadequacy of the reasons stated for that restriction. And secondly, there was no indication that anything more than what Your Honor is talking about was needed. Here we do have some indication. You know, the defendant was put on probation by his wife, and there was supposed to be monitoring and supervision of his Internet usage by a family member. And while that was going on, he possessed and received. But that's tough to enforce. Now there are things out there that can be put on that computer that can make it easily enforced. Can't get on. And if you ever somehow circumvent that, they can find out through the hard drive if you've actually downloaded pornographic images. Your Honor, I'm not aware of those software packages. There's nothing in the record about such software packages. Do you have any young kids? Excuse me? Do you have any young kids? I do. I'm surprised you're not aware of those packages. I'm very aware. I know of the best known one, and I can tell Your Honor it doesn't work. It doesn't work. I mean, if we're going to get off the record here, Net Nanny doesn't work. I wasn't sure Net Nanny was the best one. And I don't know. It was at one time considered to be the best one. But what I'm suggesting is that there was really nothing before the district court to tell it that it had some fantastic software package available to it that would enable, in a fail-safe way, to prevent the defendant from accessing child pornography. And I think the court, in the position it was in, without any argument by the defendant at sentencing regarding the conditions as opposed to the term, it's difficult to suggest that the or to say that the district court abused its discretion, much less committed plain error regarding the conditions. Just a dumb question. How much real practical difference is there between abuse of discretion and plain error? I think there's a practical. I think there's. Which one's tougher? I always, I think you combine the two and make a super tough standard of review, Your Honor. By the way, there's no such thing as a dumb question. But I think plain error is a more strict standard of review because the court can only reverse under a plain error standard if the error is plain and. It's plain, it affects substantial rights, and it affects the fairness of the system. Yes, and it affects the fairness, integrity, or public reputation of judicial proceedings. And I think that is a pretty extreme standard compared to abuse of discretion. Although it's interesting, what was sort of beat into us in law school was abuse of discretion was about as good as it gets if you're the deciding person at the outset. Well, I teach that plain error is the prosecutor's best friend. And I think it is. I thought it was harmless error. Excuse me? I thought harmless error was the prosecutor's best friend. Well, no. And obviously if there is plain error, it's not anybody's best friend. You're going to get reversed. But I think that standard of review is, I personally believe, professionally believe that that is the toughest standard. But people don't normally discuss that right next to abuse of discretion. We talk about the other standards of review, and then we sort of put harmless error and plain error review on top of those, sort of. Anyway, thank you very much. Mr. Dahmer, you can be butt Smith on Judith Pruden's if you'd like. I wouldn't attempt to, Your Honor. Just very briefly, with modern technology, filters can be placed. The judge has the sentencing discretion. Your Honor pointed out the sentencing discretion, the power of sentencing shouldn't be delegated to a probation officer. You know, I believe that Miller taught us that the least restrictive alternative is what needs to be looked at. Well, that's in the statute. But still, I think it reinforced that particular situation, and also the discussions about using filters. I think that that's really the key to this particular case, and that's why I think this matter definitely should be remanded down. Mr. Smith makes a good point about looking at both of the conditions and the term together, and it does make sense that to the extent that the term of incarceration is shortened down, both the term of the supervised release and perhaps the conditions of the defendant's behavior within that term have to be taken together, and to the extent that the defendant's getting less time, the court can reasonably be expected to impose more restrictive conditions and the longer term of supervised release. That's a decent argument. Well, I think when you look at the fact that he's getting less time, it's because at that time he had a criminal history of one. He had no prior records at the time, and he negotiated an 11C plea. And I believe the guidelines was between 70 to 80 months in that range. And he got less time because he was not a criminal. He was a prison guard. You know, I once had a defendant when I was in state court that I was sentencing for aggravated assault, first of all, aggravated assault, and in exercising his right of allocution, he said, Your Honor, you have to understand I'm not a criminal. That was, if I could say, that was tinged with a racial overtone. But he looked right at me and said, Your Honor, I'm not a criminal. I just convicted the guy of almost killing someone. Well, he had no prior record. And, you know, the incident with his wife and his child, you know, we just have her statements regarding that. I don't think that's really, I don't think the court really should weigh that at all in its thought process. You know, this man up until this instance was a rather responsible individual. He had a bad period. Well, Mr. Smith, I'm surprised, did not jump out of his chair when you said that. You can make that argument, but that's true generally in kiddie porn cases. You don't have someone with a long history of juvenile contact, ag assault, burglaries. You have someone who's many times employed because you have to have some level of income to maintain the computer and tie into the online service. They're employed, oftentimes have family. Many times the neighbors are absolutely horrified and shocked that the defendant is willing to admit this. So everything you're saying about the defendant, in your eyes, making him special, really puts him into the universe of people that we see anyhow who are kiddie porn possessors or receivers. In the sentencing judge's eyes, I'm not sure there's anything that you said that would necessarily suggest to the sentencing judge that your client should be treated less severely than some other people that he may have seen that weren't involved in soliciting but may be involved in touching. And this guy had a, I guess it was pending at the time, a state court proceeding, a prosecution for touching. But he didn't use the Internet for that purpose, as in the other cases that led with the case, they used the Internet. Mr. McIntyre is going to argue that's worse because it was his own stepdaughter who did it. Well, you know, and he contested that and he was found guilty. But the thing is that he did not use the Internet. These other folks did use the Internet. In one particular case, I think it was Crandon, he traveled out to Minnesota where he had relationships with a young girl. And, you know, I think there's a lot of difference with the cases that were cited in this particular defendant as far as his use of the Internet and the imposition of 20 years restriction on it as it's so situated is unreasonable. There's other means in which those goals can be achieved so that he does not access child pornography. No one has the right to access child pornography. Well, then how do we deal with Tillman? If you were writing this and you had Tillman sitting out there where the court imposed a period of supervised release for 10 years and imposed a special condition which prevented the defendant from owning or operating a personal computer with Internet access in a home, which is a bit different here, or at any other location, but it's still going to ownership there, including employment without prior approval from a probation officer and possessing or viewing any material, which is different. But focusing on that first issue, how do you get around that? I think you have to distinguish the fact that he did not use the Internet to lure people. I've been going back to that particular point, but I think that's crucial. He did not use the Internet to lure individuals to victimize children. He downloaded, all right? That's unquestionable. And he pled guilty to 39 images, and that was all the government was able to prove. If that's the argument, maybe we sort of end up where we started because that ability to distinguish Tillman existed at the time you filed your opening brief on February 5th of this year, or February 4th of this year. Is that correct? Correct. So in the back of my mind, I was wondering, were you thinking of doing an Anders brief at one point, by the way? You didn't cite Crandon, which is the case. That might qualify for a privileged response. And you didn't try to distinguish Tillman. No, I wasn't considering an Anders brief. All right. Thank you. Thank you. Thank you. I'm going to advise on what we think also.